UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 11 B 28958 |
| | ) | |
| RONALD A. ERIKSEN, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Judge Donald R. Cassling |
| | ) | |
| | ) | |
| PETTI MURPHY & ASSOCIATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 11 A 02120 |
| | ) | |
| RONALD A. ERIKSEN, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This matter is before the Court on the Debtor's Motion for Summary Judgment. For the reasons stated herein, the Court denies in part and grants in part the Motion. Summary judgment is denied with respect to the claim of nondischargeability under 11 U.S.C. § 523(a)(2)(A). The Court grants summary judgment for the Debtor under 11 U.S.C. § 523(a)(2)(B) and (a)(6).

### I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to resolve this matter under 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

### II. BACKGROUND

On July 14, 2011, Ronald A. Eriksen (the "Debtor") filed a joint voluntary Chapter 7 bankruptcy petition with his wife, Julie A. Eriksen. The Court granted both debtors a discharge

1

on January 18, 2012. On October 17, 2011, the law firm Petti Murphy & Associates (the "Plaintiff") filed a complaint to determine the dischargeability of a debt (the "Complaint"). The Plaintiff is a creditor of the Debtor as the result of a monetary judgment entered in the Circuit Court of Kane County, Illinois. This Motion for Summary Judgment was filed on May 21, 2012.

In the Complaint, the Plaintiff asserts that the debt owed to it by the Debtor is nondischargeable under three provisions of the Bankruptcy Code: 11 U.S.C. § 523(a)(2)(A), (a)(2)(B), and (a)(6). Section 523(a)(2)(A) applies to debts for, *inter alia*, money or services obtained by false pretenses, a false representation, or actual fraud. Section 523(a)(2)(B) applies to debts for money or services obtained by use of a materially false statement made in writing by the debtor. Section 523(a)(6) excepts from discharge debts for willful and malicious injury to the creditor or its property.

### III. APPLICABLE STANDARDS

Summary judgment is appropriate when the evidence presented to the Court shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(e) (made applicable by Federal Rule of Bankruptcy Procedure 7056). A defendant's motion for summary judgment is the "put up or shut up moment" during which the plaintiff is challenged to present evidence that it has a triable claim. *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (internal quotation marks omitted). To survive a defendant's motion for summary judgment, the plaintiff must make its prima facie case. *Fischer Inv. Capital, Inc. v. Cohen (In re Cohen)*, 334 B.R. 392, 397 (Bankr. N.D. Ill. 2005), *aff'd*, No. 06 C 3190, 2006 WL 4991323 (N.D. Ill. Aug. 7, 2006), *aff'd*, 507 F.3d 610 (7th Cir. 2007). Factual disputes are only relevant to motions for summary judgment when they are outcome-determinative. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Fritcher v.*

2

*Health Care Serv. Corp.*, 301 F.3d 811, 815 (7th Cir. 2002). Reasonable inferences drawn from the facts must be viewed in the light most favorable to the non-movant. *Roger Whitmore's Auto. Servs., Inc. v. Lake Cnty., Ill.*, 424 F.3d 659, 666–67 (7th Cir. 2005).

The party seeking to establish an exception to the discharge of a debt bears the burden of proof. *Goldberg Sec., Inc. v. Scarlata (In re Scarlata)*, 979 F.2d 521, 524 (7th Cir. 1992). The standard of proof required to render a debt nondischargeable is a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 291 (1991); *In re McFarland*, 84 F.3d 943, 946 (7th Cir. 1996). Exceptions to the discharge of a debt are to be construed strictly against a creditor and liberally in favor of a debtor, *In re Morris*, 223 F.3d 548, 552 (7th Cir. 2000), "so as not to undermine the Code's purpose of giving the honest but unfortunate debtor a fresh start." *Park Nat'l Bank & Trust of Chi. v. Paul (In re Paul)*, 266 B.R. 686, 693 (Bankr. N.D. Ill. 2001).

## IV. DISCUSSION

### A. Uncontested Facts

On September 5, 2008, involuntary bankruptcy proceedings were brought against USA Baby, Inc. ("USA Baby"), a franchisor receiving the bulk of its income from royalty and other payments from its franchisees. (Statement of Facts Supp. Def. Mot. Summ. J. ¶¶ 9 & 10.) The Debtor was the majority shareholder of USA Baby prior to the commencement of the corporation's involuntary Chapter 11 case and through its conversion to a Chapter 7 case. (Eriksen Aff. ¶ 1.) On November 10, 2008, the Debtor executed a Voting Trust Agreement (the "Agreement") with Scott Wallis ("Mr. Wallis"), the president and a major shareholder of USA Baby. (Pl. Ex. C.) This Agreement made Mr. Wallis the trustee of the Debtor's interests in USA Baby, giving him the right to vote on or consent to certain business matters as principal shareholder. (*Id.*)

3

After the withdrawal of USA Baby's original attorneys, Mr. Wallis and the Debtor sought the legal services of the Plaintiff. (Eriksen Aff. ¶ 5; Def. Ex. E-2.) On November 10, 2008, just days before a hearing scheduled for November 25, 2008, they met with Edgar Petti ("Mr. Petti"), a principal of the Plaintiff, Petti Murphy & Associates, along with another attorney from that firm. (Eriksen Aff. ¶ 5.) The Plaintiff agreed to represent USA Baby on the condition that the Debtor personally guarantee its attorney's fees. (Eriksen Aff. ¶ 12.) The Debtor executed a personal guarantee agreement (the "Guarantee") on November 18, 2008. (Eriksen Aff. ¶ 12.) The Legal Services Engagement Letter (the "Letter") drafted by the Plaintiff required an advance retainer payment of $12,000. (Def. Ex. E-1.) However, Mr. Wallis requested that it be split into two payments of $6,000 each, to accommodate USA Baby's cash flow difficulties. (Def. Ex. E-2.) The Plaintiff agreed to that change in the terms of the contract. (Def. Ex. E-3.)

USA Baby's first $6,000 payment for legal services was made by the tender of USA Baby check number 6167 (the "Check"), dated November 17, 2008, and signed by the Debtor. (Pl. Ex. D; Def. Ex. E-4.) The Check was deposited on November 20, 2008. (Petti Dep. 64:9 – 64:18, Apr. 20, 2012; Pl. Ex. D; Def. Ex. E-4.) On November 25, 2008, the Check was returned by the Plaintiff's bank because USA Baby's account had insufficient funds to honor it ("NSF"). (Def. Ex. E-4.) That Check is at the center of this controversy.

The Plaintiff moved to withdraw from representation of USA Baby before the Check was returned. (Statement of Facts Supp. Def. Mot. Summ. J. ¶ 35.) By that point, the Plaintiff had invoiced USA Baby for at least $8,886 worth of services related to the bankruptcy case. (Def. Ex. E-13.) Following its withdrawal from representation of USA Baby, the Plaintiff attempted once again to deposit the Check, but it was again returned NSF. (Def. Ex. E-11 p. 3.)

4

On February 17, 2009, the Plaintiffs brought suit against the Debtor in state court for deceptive practices under the Criminal Code of 1961 (the "Illinois Deceptive Practices Statute") and on the Guarantee. (Compl. ¶ 22.) The Illinois Deceptive Practices Statute creates a civil action when "[w]ith intent to . . . pay for . . . labor or services of another . . . [a person] issues or delivers a check . . . for the payment of money, knowing that it will not be paid by the depository." 720 Ill. Comp. Stat. 5/17-1(B)(1) & -1(E) (2012). On November 10, 2010, a judgment was entered against the Debtor on the deceptive practices claim in the amount of $19,815, which included treble damages, court costs, and reasonable attorney's fees, including those incurred defending frivolous motions and counterclaims. (Compl. ¶¶ 22, 24, & 25; Pl. Ex. B; Petti Dep. 82:10 – 82:20.) An additional judgment of $12,105 was entered based upon the Debtor's Guarantee. (Compl. ¶ 26.)[1] However, the Plaintiff is not seeking nondischargeability for the latter debt. (Pl. Resp. to Def. Statement of Facts Supp. Def. Mot. Summ. J. p. 17.) Both judgments are currently on appeal. (Compl. ¶ 26.)[2]

### B. Analysis and Contested Facts

Section 523 of the Bankruptcy Code establishes that certain debts are nondischargeable. The Plaintiff asserts that the debt owed to it by the Debtor is nondischargeable under three categories laid out in § 523. The Court will address each assertion of nondischargeability separately.[3]

---

[1] The Complaint contains two paragraphs numbered 26. This citation refers to the first paragraph 26.
[2] This citation refers to the second paragraph 26.
[3] Both § 523(a)(2)(A) and (a)(2)(B) refer to statements "respecting the debtor's or an insider's financial condition." The Bankruptcy Code defines an "insider" of an individual debtor as, among other things, a "corporation of which the debtor is a director, officer, or person in control[.]" 11 U.S.C. § 101(31)(A)(iv). Mr. Wallis was already the trustee of the Debtor's interests in USA Baby, by operation of the Agreement, at the time the legal services were provided. The evidence presented does not specify what the Debtor's legal relationship with USA Baby was at the time that the Plaintiff's services were retained. However, the Court will consider the Debtor to be at least a "person in control" of USA Baby.

### 1. Section 523(a)(2)(A)

Section 523(a)(2)(A) excepts from discharge debts "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by — false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). The judgment entered against the Debtor under the Illinois Deceptive Practices Statute is a debt for money under § 523(a)(2)(A). However, the preclusive effect of that state court judgment in these proceedings is quite limited because of essential differences between a claim under the Illinois Deceptive Practices Statute and a nondischargeability claim under § 523(a)(2)(A). *See Nike Lite Signs & Balloons, Inc. v. Philopulos (In re Philopulos)*, 313 B.R. 271, 280 (Bankr. N.D. Ill. 2004) ("Establishment of the Debtor's fraudulent intent under the [Illinois Deceptive Practices Statute] does not automatically render [a] debt nondischargeable under 11 U.S.C. § 523.").

The three relevant elements of a state civil action for passing a bad check are (1) fraudulent intent, (2) knowledge that a check will be dishonored (whether actual knowledge or based on a statutory inference), and (3) delivery of said check. 720 Ill. Comp. Stat. 5/17-1(B)(1); *Veteran Supply Co. v. Swaw*, 548 N.E.2d 667, 668 (Ill. App. Ct. 1989). A claimant is not required to prove a fraudulent statement or justifiable reliance upon it. In contrast, a creditor asserting a claim pursuant to § 523(a)(2)(A) must show that "(1) the debtor made a false representation or omission, (2) that the debtor (a) knew was false or made with reckless disregard for the truth and (b) was made with the intent to deceive, (3) upon which the creditor justifiably relied." *Ojeda v. Goldberg*, 599 F.3d 712, 716-17 (7th Cir. 2010).

6

*Summary Judgment on a False Representation*

The first question is whether the Debtor made a false representation under § 523(a)(2)(A). It is well established that tendering an NSF check does not constitute a representation of any sort, much less a false representation. *Williams v. United States*, 458 U.S. 279, 284 (1982) (noting, in the criminal context, that "a check is not a factual assertion at all"). This reasoning has been applied to claims of nondischargeability under § 523(a)(2)(A). *Scarlata*, 979 F.2d at 525. Courts require more than the act of knowingly passing a bad check to find nondischargeability. *See id.* Even a knowingly false statement that a debtor's or insider's check will be honored cannot trigger § 523(a)(2)(A) because that would constitute a statement about that party's financial condition and therefore extend beyond the explicit boundaries of the statute. *Goldberg Sec., Inc. v. Scarlata (In re Scarlata)*, 127 B.R. 1004, 1010 (N.D. Ill. 1991), *aff'd*, 979 F.2d 521; *Banner Oil Co. v. Bryson (In re Bryson)*, 187 B.R. 939, 960 (Bankr. N.D. Ill. 1995).

The parties agree that Mr. Wallis represented that the Check would be honored and that USA Baby could pay its bills on time. However, Mr. Wallis is not the debtor in this case. The obvious next question is whether Mr. Wallis' statements can be attributed to the Debtor, as would be the case if Mr. Wallis was the Debtor's agent. Whether or not an agency relationship can be established between Mr. Wallis and the Debtor is measured by Illinois law. An agent's authority "may be either actual or apparent; actual authority may be either express or implied." *Ill. Armored Car Corp. v. Indus. Comm'n*, 563 N.E.2d 951, 955 (Ill. App. Ct. 1990).

The Plaintiff argues that the Agreement and subsequent conduct among the parties prove that Mr. Wallis was the Debtor's personal agent. (Petti Dep. 22:9 – 23:5.) The Debtor counters that the Agreement did not establish an agency relationship but merely transferred his legal rights

7

with respect to operations of USA Baby to Mr. Wallis. (Eriksen Aff. ¶ 19.) A plain reading of the Agreement makes clear only that Mr. Wallis was authorized to represent the Debtor's stock ownership in USA Baby. (Pl. Ex. C.) The Agreement contains no provisions expressly granting Mr. Wallis the actual authority of an agent. (*Id.*) Furthermore, the Plaintiff has offered no evidence showing that implied agency existed.

"[A]n 'apparent agent' is a person who, whether authorized or not, reasonably appears to third persons, because of acts of another, to be authorized to act as agent for such other person." *First Am. Title Ins. Co. v. TCF Bank, F.A.*, 676 N.E.2d 1003, 1008 (Ill. App. Ct. 1997) (quoting *FDL Foods, Inc. v. Kokesch Trucking, Inc.*, 599 N.E.2d 20, 27 (Ill. App. Ct. 1992)). Apparent authority "can only be established upon the words and conduct of the alleged principal, not the alleged agent." *First Am. Title Ins.* 676 N.E.2d at 1008.

Thus, only the Debtor's actions, and not Mr. Wallis', are relevant to determining whether apparent agency existed. On this issue, the parties flatly contradict each other. The Debtor states that he never represented Mr. Wallis to be his agent, while Mr. Petti's deposition and affidavit state the opposite. (Eriksen Aff. ¶19; Petti Aff. ¶ 10; Petti Dep. 22:19 – 23:5.) Because these sworn statements are contradictory, a trial would be required to determine whose testimony is more credible, and thus whether Mr. Wallis was, in fact, the Debtor's apparent agent.

The question remains whether the Debtor *himself* represented that the Check would clear. In his affidavit supporting this Motion, the Debtor states that he never represented that the Check would be honored. (Eriksen Aff. ¶ 18.) Indeed, Mr. Petti initially appeared to agree that the Debtor did not directly represent that the Check would be honored. (Petti Dep. 99:1 – 100:3.) However, Mr. Petti, on behalf of the Plaintiff, later argued that the Debtor did represent that the Check would be honored. (Pl. Resp. to Def. Mot. Summ. J. at p. 5; Petti Aff. ¶ 4.) The heart of

the Plaintiff's claim under § 523(a)(2)(A) is whether the Debtor actually represented that the Check would be honored. This factual dispute would require a trial to resolve.

Further, the Plaintiff has raised a genuine issue of material fact with respect to certain statements made by the Debtor to Mr. Petti. Mr. Petti's affidavit states that the Debtor made the following statements in order to induce the Plaintiff to continue working on the bankruptcy case:

> [The Debtor] requested at the time that [Mr. Petti] and [the Plaintiff] continue working up the case for trial because [the Plaintiff] had received half of the funds and would receive a second check for $6,000 within a short period, never once revealing that there were insufficient funds to pay either of these amounts. [The Debtor] made representations that a second check had been written and issued as a pretext to get [Mr. Petti and the Plaintiff] to appear at the trial for [USA Baby].

(Petti Aff. ¶ 5.)

The allegation that the Debtor made false statements regarding his intent to send Plaintiff a second check in order to induce the Plaintiff to continue working on the USA Baby bankruptcy case raises an issue of fact to be determined at a trial on the merits. (Pl. Resp. to Def. Statement of Facts Supp. Def. Mot. Summ. J. ¶ 28.) Moreover, because these alleged false representations are not statements "respecting the debtor's or an insider's financial condition," § 523(a)(2)(A) applies. The Court therefore finds that the Plaintiff has raised a genuine issue of material fact regarding whether these representations were false, known by the Debtor to be false, and made with an intent to deceive the Plaintiff.

*Summary Judgment on "Justifiable Reliance"*

The Debtor also asserts that summary judgment of the Plaintiff's § 523(a)(2)(A) claim is proper because the Plaintiff cannot prove the essential element of "justifiable reliance" upon the debtor's fraudulent statements. The Court finds that, while the question is a close one, summary judgment likewise would not be appropriate on the ground of lack of justifiable reliance.

Justifiable reliance is an intermediate standard between actual and reasonable reliance:

> Justifiable reliance is a less demanding standard than reasonable reliance; it requires only that the creditor did not "blindly [rely] upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." Under the justifiable reliance standard, a creditor has no duty to investigate unless the falsity of the representation would have been readily apparent. But the justifiable reliance standard is not an objective one. Rather, it is determined by looking at the circumstances of a particular case and the characteristics of a particular plaintiff.

*Ojeda*, 599 F.3d at 717 (quoting *Field v. Mans*, 516 U.S. 59, 71 (1995)) (citations omitted).

Despite diligent research, the Court has been unable to find a case in which the creditor seeking nondischargeability was also the debtor's (or an insider's) bankruptcy attorney. Even if the Court were to accept at face value Mr. Petti's assertion that he relied on the Debtor's representations that the Check would clear when he agreed to continue to represent USA Baby (Petti Aff. ¶¶ 5, 6, & 9), the Court would still have to consider whether that reliance was justifiable.

Several pieces of evidence suggest that the Plaintiff's reliance on the Debtor's and Mr. Wallis' statements was not justifiable. The Plaintiff is a law firm, and Mr. Petti, its principal attorney handling the USA Baby case, is an attorney with extensive experience representing debtors in bankruptcy cases. (Petti. Dep. 5:3-5:16.) Experienced bankruptcy counsel, at the very least, should be skeptical of an assertion of financial solvency coming from a client it is representing as a debtor in a Chapter 11 or Chapter 7 case. Counsel's skepticism should be heightened when the client making such an assertion was involuntarily forced into bankruptcy, as was USA Baby.

Even more significant, the Plaintiff in this particular case was *actually aware* that USA Baby was a credit risk. The precariousness of USA Baby's financial position is explicitly stated in the letter from the Plaintiff to Mr. Wallis and the Debtor, reinforced by Mr. Wallis' response

to the Plaintiff, and further emphasized by the Plaintiff's insistence that Mr. Wallis and the Debtor personally guarantee USA Baby's legal bills.[4]

However, the evidence does not establish as a matter of law that Plaintiff's reliance was unjustifiable under the standard set forth in *Ojeda*. The Court finds that there is a genuine issue of material fact as to whether the Plaintiff's reliance was justifiable. That determination is not appropriate at this stage of the proceedings.

The Debtor has also asserted that summary judgment is proper because the elements of damages and intent are missing. The very existence of a monetary judgment for deceptive practices is sufficient to prevent the grant of summary judgment for failure to prove the element of damages. Additionally, there is an issue of fact with respect to the Debtor's intent at the time he made the alleged misrepresentations that precludes the entry of summary judgment.

### 2. Section 523(a)(2)(B)

The Plaintiff also asks this Court to find the debt nondischargeable under § 523(a)(2)(B). Under that section, a debt is found nondischargeable if it arises from

> use of a statement *in writing* – (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive.

11 U.S.C. § 523(a)(2)(B) (emphasis added). The statute requires that all of these conditions be met in order for a debt to be found nondischargeable.

As discussed above, a check is not a factual representation about the financial condition of the payor. *Williams*, 458 U.S. at 284; *Scarlata*, 979 F.2d at 525. The evidence presented to the Court shows no other written representation by the Debtor that USA Baby was solvent. Furthermore, even if the Court were to find at trial that Mr. Wallis was the Debtor's agent, the

---

[4] The Plaintiff also mentions a USA Baby bank statement that the Debtor purportedly supplied to Mr. Petti in order to show the company's solvency. The Debtor correctly objects to this document because it is hearsay.

only written statement about USA Baby's financial condition allegedly made by Mr. Wallis was that "[c]ash flow . . . has been tight . . . ." (Def. Ex. E-2.) This is directly contradictory to the Plaintiff's assertion that it relied on statements that USA Baby was solvent. Furthermore, no allegations have been made that that statement was false. Because the Plaintiff has failed to show a false statement made *in writing* about the financial condition of the Debtor or USA Baby, the Court grants summary judgment to the Debtor with respect to § 523(a)(2)(B).

### 3. Section 523(a)(6)

In its Complaint, the Plaintiff also seeks a judgment of nondischargeability under § 523(a)(6). That provision excepts from discharge debts incurred "for willful and malicious injury by the debtor to another entity or to the property of another entity[.]" 11 U.S.C. § 523(a)(6). Even though the Debtor is seeking summary judgment for this part of the Plaintiff's claim, neither party has argued about the dischargeability of a debt under § 523(a)(6). However, the lack of argument with respect to the § 523(a)(6) claim does not prevent the Court from ruling on this matter. It is true that § 523(a)(6) largely encompasses intentional torts, and tendering a bad check in violation of the Illinois Deceptive Practices Statute is an intentional tort for fraud. However, canons of statutory construction require that "when both a specific and a general provision govern a situation, the specific one controls." *Berson v. Gulevsky (In re Gulevsky)*, 362 F.3d 961, 963 (7th Cir. 2004) (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384-85 (1992); *In re Lifschultz Fast Freight Corp.*, 63 F.3d 621, 628 (7th Cir.1995)). The specific provisions of § 523 contained in § 523(a)(2)(A) and (a)(2)(B), which themselves cover torts based upon fraud, are therefore read to prevent claims based upon fraud from being considered under the more general terms of § 523(a)(6). *Jendusa-Nicolai v. Larsen*, 677 F.3d 320, 322 (7th Cir. 2012) ("Indeed, not even all intentional torts are covered [by § 523(a)(6)].

12

Debts resulting from fraud, for example, are covered in different sections of the Bankruptcy Code.") (citations omitted); *Wachovia Sec., LLC v. Jahelka (In re Jahelka)*, 442 B.R. 663, 671-72 (Bankr. N.D. Ill. 2010) ("Sections 523(a)(2) and (a)(6) are mutually exclusive. Debts resulting from fraud are therefore nondischargeable under section 523(a)(2) or not at all."). Because the controlling case law prohibits debts incurred through fraud from being found nondischargeable under § 523(a)(6), the Court grants summary judgment on this portion of the claim.

## V. CONCLUSION

For the foregoing reasons, the Court denies in part and grants in part the Debtor's Motion for Summary Judgment. Summary judgment is denied with respect to the claim of nondischargeability under § 523(a)(2)(A), but is granted for the Debtor under § 523(a)(2)(B) and (a)(6). A status hearing is set for August 10, 2012 at 10:00 a.m.

**ENTERED:**

DATE: August 2, 2012

Donald R. Cassling
**United States Bankruptcy Judge**